[L. A. No. 15729.   In Bank.—June 30, 1936.]

THE COLBURN BIOLOGICAL INSTITUTE (a Nonprofit California Corporation) et al., Respondents, v. ETHEL M. DeBOLD, Appellant.

Chas. M. Easton and Palmyra Pressly for Appellant.

Richards & Poyet, D. W. Richards and H. F. Poyet for Respondents.

THE COURT.—The respondents have moved for a dismissal of this appeal on the ground that appellant failed to serve and file her proposed bill of exceptions within the time provided by section 650 of the Code of Civil Procedure, which motion we shall consider before discussing the case on its merits. The following facts appear from the bill of exceptions, the certificate of the clerk of the trial court and the affidavits and exhibits filed in support of and in opposition to the motion to dismiss and the motion for diminution of the record which latter motion was denied by the District Court of Appeal while the appeal was there pending. Notice of entry of judgment was served on appellant on June 19, 1933. Appellant moved for a new trial, which motion was denied on June 24, 1933, but no notice of the ruling was ever served on appellant. August 14, 1933, appellant filed her notice of appeal and on May 21, 1934, served and filed her proposed bill of exceptions. The bill of exceptions was certified by the trial judge August 7, 1934, respondents having interposed a motion to terminate proceedings for preparation of a record on appeal and to strike the proposed bill of

exceptions. Thereafter appellant instituted in the District Court of Appeal proceedings in *mandamus* to compel the trial court to settle and allow additional exceptions and, after denial of the writ, filed in the District Court of Appeal a petition to prove exceptions under section 652 of the Code of Civil Procedure. As a result of this last proceeding the District Court of Appeal settled a supplemental bill of exceptions on July 1, 1935. In connection with each of these supplemental proceedings the District Court of Appeal made an order extending appellant's time to file her transcript until after final determination of the pending proceeding. These orders are immaterial since this motion to dismiss is grounded upon a claim of default prior to the settlement of the bill of exceptions by the trial court on August 7, 1934.

█ The certification by the trial court is conclusive of this motion. It is well settled that certification of the record by the trial judge is the equivalent of relief from default under section 473 of the Code of Civil Procedure and within the exercise of the sound discretion of the trial court. (*Keys* v. *Mother Lode Extension Mines,* 212 Cal. 612 [299 Pac. 524]; *Stenzel* v. *Kronick,* 201 Cal. 26 [255 Pac. 199]; *Town of Mill Valley* v. *Massachusetts etc. Co.,* 189 ·Cal. 52 [207 Pac. 253]; *Atowich* v. *Zimmer,* 129 Cal. App. 193 [18 Pac. (2d) 370]; *Rubin* v. *Platt Music Co.,* 79 Cal. App. 756 [251 Pac. 243].) █ Respondent insists, however, that the proposed bill of exceptions not having been presented within six months of the expiration of the time allowed by section 650 of the Code of Civil Procedure, the jurisdiction of the court to relieve from the default had expired. In support of this contention respondents cite *Buis* v. *Lindauer Corp.,* 116 Cal. App. 558 [3 Pac. (2d) 18]. We are satisfied that the better rule is that the six months' period within which the trial judge retains jurisdiction to relieve from default is not set in motion until some proceeding or action is taken by the adverse party based upon the default or some order of the court is made as a result thereof. (*Pollitz* v. *Wickersham,* 150 Cal. 238 [88 Pac. 911], *Weaver* v. *Shell Oil Co.,* 124 Cal. App. 233 [12 Pac. (2d) 167], and cases there cited.) In so far as *Buis* v. *Lindauer Corp., supra,* holds to the contrary it is overruled. The .respondents did not present their motion for termination until May 29, 1934, and

on August 7, 1934, within three months of the motion, the trial court certified the bill of exceptions as settled over their objection.

Relying upon *Rossi* v. *Scott, Magner & Miller,* 41 Cal. App. 646 [183 Pac. 263], the respondents urge that where the bill of exceptions is settled although it has not been presented within the time provided and respondent has made timely objection to its settlement, the burden is upon the appellant to incorporate in the record affirmative matter in excuse of his delay and that in the absence of such a showing the bill of exceptions, although settled by the trial court, cannot be considered upon appeal. In answer to this contention it may be pointed out, first, that it does not appear upon the face of the bill of exceptions in the case now before us that respondents were not served within the time allowed with the proposed bill of exceptions and, second, that this rule is no longer rigidly enforced, the matter of excuse for delay being considered to be more properly a subject for investigation by the trial court. (*Stenzel* v. *Kronick, supra; Rubin* v. *Platt Music Co., supra.*)

The present litigation is the culmination of a long series of disputes between rival factions of the board of trustees of the plaintiff corporation. The Colburn Biological Institute is a non-profit corporation organized in 1920 for the general purpose of spreading the teachings of a Dr. Edgar L. Colburn. In 1925, Dr. Colburn died while traveling in China with the plaintiff Oberdorfer, who was his secretary and one of the nine original trustees. Upon the return of Oberdorfer, dissension arose with regard to the editing, publishing and copyrighting of the "wisdom papers" and other manuscripts of Dr. Colburn and, finally, on March 19, 1929, a settlement agreement was entered into by all the then trustees (9) whereby the papers were to be deposited in a trust with arrangements for withdrawal when necessary by the present plaintiffs Farwell and Oberdorfer who were to continue with the work of preparing them for publication and copyrighting. The agreement also provided that the then trustees gave Farwell and Oberdorfer their irrevocable proxies to and including March 1, 1936, to be used solely for the purpose of perpetuating themselves in office as trustees in order to carry out the agreement with regard

to the publication of the papers, and that any new trustee as a matter of qualifying for office should immediately execute a similar proxy.

Since the next events in the struggle for the control of the board involve the legality of elections of members and trustees, we insert here the pertinent provisions of the articles of incorporation and by-laws as found by the trial court herein, and by Judge Yankwich in action No. 333823, hereafter to be discussed. "The number of trustees shall be nine" (Art. V of the Articles of Incorporation); "each member of this corporation shall hold his membership for such term as may be prescribed by the By-Laws and in the event of a vacancy a successor may be chosen by a three-fourths majority vote of the remaining trustees" (Art. VI of the Articles of Incorporation); "New Members . . . shall be elected by ballot, by a three-fourths majority vote of the remaining trustees, either at the Annual Meeting of the Institute, or at a special meeting duly called for that purpose . . . If and when the number of members shall be less than nine, the remaining members shall have the power to add one member to their number until the number shall be not less than nine . . . All powers of the Institute shall be exercised by its members" (Art. I of the By-Laws); "The annual meeting shall be held on the last Friday in March of each year" (Art. II of the By-Laws), but no hour of the day is fixed for that meeting; "At each annual meeting of the Institute or in default of election at such meeting, then at an adjournment thereof, or at any meeting duly called for that purpose, the Institute shall elect the officers by ballot" (Art. V of the By-Laws); "all of the members of the Institute shall be its Trustees, and the election of any person as a member of the Institute shall constitute him a Trustee" (Art. VI of the By-Laws); "The President or any three members of the Institute may call a special meeting of the Institute, by not less than three days' notice in writing, given by the President or the Secretary, or the members calling such meeting" (Art. III of the By-Laws); "All notices required by these by-laws or otherwise for the purpose of the Institute shall be in writing, and shall be either personally delivered or mailed to the members . . . at their address as entered in the office of the Secretary" (Art. XII of the By-Laws).

In December of 1931 the trustees were Nora H. Bates, Margaret N. P. Colburn-Wall, Alice N. Farwell, Gilbert A. McElroy, Thomas K. Norton, C. Cecilia Oberdorfer, Fannie Shaffer, Corrinne E. Thornton and Henry B. Wall. On December 17, 1931, a regular meeting was held. There were present at this meeting Trustees Bates, Farwell, McElroy, Oberdorfer and Wall. Absent: Colburn-Wall, Norton, Shaffer and Thornton. At this meeting McElroy presided: H. D. Maize, William Fiske, Charles W. Morris and James C. Williams were elected members. Thereafter McElroy presented the resignations of himself, Norton and Thornton, as trustees and officers, which resignations were accepted. Whether the resignations of Farwell and Oberdorfer were also presented is one of the issues in the present case. Thereafter the new members were elected to various offices, and the meeting adjourned to meet on December 21, 1931, in Room 607 of the Western Mutual Life Building in Los Angeles, the office of Drs. Farwell and Bates. Notice of the adjournment, with time and place of meeting, dated December 18, 1931, and signed by Morris as secretary was sent to Shaffer. On December 21, 1931, Trustees Shaffer, Bates, Colburn-Wall and H. B. Wall wrote Oberdorfer, Farwell, Williams, Maize, Fiske and Morris refusing to recognize the elections of the four latter as members and trustees or officers of the Institute. On December 21st, at the hour of the meeting, the Farwell-Oberdorfer contingent arrived at 607 Western Mutual Life building to find the door locked and that Dr. Shaffer, whose office was next door at number 606, had called a police officer. The meeting was held in the hall and further elections of officers were had.

Shortly thereafter suit was brought in behalf of the corporation by Trustees Bates, Colburn-Wall, Henry B. Wall and Shaffer to set aside the elections and business transacted on December 17, 1931, and at the adjourned meeting on December 21, 1931. In this they were successful and the judgment in action numbered 333823, in the superior court of Los Angeles County (designated throughout this opinion as the "Yankwich case") rendered March 7, 1932, declared illegal and set aside all elections attempted to be held on either of those dates, and that all business attempted to be done on the December 21st, adjourned meeting, was illegal,

null and void. The findings are detailed and recite as facts found, that the meeting was regularly called in the first instance and that there was a quorum present at the December 17, 1931, meeting, but it was not noticed as being for the purpose of election; that there were nine duly elected, qualified and acting members and trustees at the time Maize, Fiske, Morris and Williams were attempted to be elected by vote of three of the then nine trustees; that the resignations of McElroy, Norton and Thornton were duly, regularly and lawfully presented, acted upon and accepted. Each succeeding election attempted on December 17, 1931, is specifically found to have been by vote of less than a majority of the then trustees and the adjourned meeting of December 21, 1931, is found to have been attended by less than a quorum of duly elected, qualified and acting trustees. The findings are silent as to resignations of Oberdorfer and Farwell.

In the meantime, a special meeting was called for December 28, 1931, which Oberdorfer and Farwell did not attend although they admit they were given notice. It is stipulated that on this date the trustees were Wall, Colburn-Wall, Shaffer, Bates, Oberdorfer and Farwell. On January 2, 1932, Oberdorfer and Farwell received notice signed by Bates, Colburn-Wall, Shaffer and Wall, that the stated meetings during the year 1932 would be held on the second Friday of each month at room 606, Western Mutual Life Building, without further notice and urging attendance at the next meeting on January 8, 1932. On January 18, 1932, notice was sent to all the trustees, over the signature of the defendant Ethel M. DeBolt, secretary *pro tempore*, that there would be an adjourned meeting on January 22, 1932. The plaintiffs Oberdorfer and Farwell did not attend either the January 8th or the January 22d meeting and at the second meeting a resolution was adopted by vote of Shaffer, Wall, Colburn-Wall and Bates, accepting the resignations of Farwell and Oberdorfer. A copy of the minutes showing this resolution was sent to Oberdorfer and Farwell. It is undisputed that no further notices were sent to the plaintiffs until January 6, 1933.

On March 21, 1932, shortly after entry of the Yankwich judgment, Oberdorfer and Farwell filed a complaint (action

number 337–301, designated herein as the Ballard case) seeking declaratory relief to determine their rights under the settlement agreement of March 19, 1929, and the trust created in pursuance thereof. While the files of this action were by stipulation admitted as evidence in the present action, the record brought up contains only a memorandum opinion of Judge Ballard, rendered December 2, 1932, prior to the making of findings, and a temporary restraining order issued on March 21, 1932, enjoining the defendants (Fannie Shaffer, Margaret N. P. Wall, Henry Wall and Nora H. Bates) from attempting to prevent the plaintiffs from attending any meeting or exercising their privilege to perpetuate themselves as trustees and directing that notices of all meetings be sent them. This order was modified on March 24, 1932, by an order directing that the annual meeting scheduled for March 25, 1932, might be held, but only for the purpose of adjournment to the date of the next stated meeting and from monthly stated meeting to monthly stated meeting and not for the transaction of any business, and that the plaintiffs be allowed to attend unmolested as observers but not as trustees, pending the determination of the case and the rights of the plaintiffs to membership on the board of trustees. This order as modified was continued in effect by order on March 30, 1933, which gave similar directions as to the annual meeting scheduled for March 31, 1933. The memorandum opinion of Judge Ballard, signed December 2, 1932, stated that judgment would be that the trust and settlement agreement should be terminated, that although the question of the resignations of Farwell and Oberdorfer was not an issue in the case, the court was of the opinion they had not resigned and the judgment would direct that they be unmolested in and allowed to attend any and all meetings and receive notice of the meetings "together with such other rights as are or may be accorded Trustees".

On January 6, 1933, Farwell and Oberdorfer were sent a notice of the time and place of the regular meetings for the year 1933, signed by Shaffer, DeBolt and Bates as trustees, and reciting that it was sent in accordance with the Ballard memorandum opinion. Oberdorfer and Farwell replied thereto on January 10, 1933, pointing out that no findings or judgment had been signed by Judge Ballard, refusing to

recognize Norton and DeBolt as trustees or the notice as a valid notice, signed by three trustees as required by the by-laws, asserting that they were trustees and offering to meet at an agreed time with Bates and Shaffer. On March 2d, they again wrote Bates and Shaffer inquiring whether the next regular meeting was on March 10, 1933, as they understood from the notice of January 6, 1933, and saying they contemplated attendance. On March 4, 1933, plaintiffs received a letter signed by Bates, Norton, Shaffer and DeBolt as trustees, inclosing a copy of the notice of January 6, 1933, and closing with the statement, ''The above notice still holds good''. Farwell and Oberdorfer appeared at the place of meeting on March 10, 1933, but did not remain after the meeting was called to order. At that time the defendants DeBolt and Norton were served with the complaint or petition in this action instituted under section 315 of the Civil Code to contest their election as trustees.

By their complaint, filed March 9, 1933, Oberdorfer and Farwell, suing as individuals and on behalf of the Institute, asked to have the elections of Norton, on February 29, 1932, and DeBolt, on March 7, 1932, as members and trustees, and all resolutions and acts of the board of trustees done in the absence and without the consent of the plaintiffs, declared null and void. They also asked that the defendants Norton and DeBolt be restrained from holding themselves out as trustees or as having any connection with or control over the property and assets of the corporation.

On March 16, 1933, the defendants appeared by demurrer setting up points now urged for reversal. On the same day the defendants filed their answer setting up the same matters, and in addition the affirmative defenses of laches and that the elections complained of were held after the plaintiffs had ceased to be trustees of the Institute, by reason of their failure to attend any stated meetings after the meeting of December 17, 1931, as well as because of the acceptance of their resignations on January 22, 1932. There are also allegations of a conspiracy on the part of the plaintiffs and their attorneys to gain control of the property and assets of the corporation.

The trial court overruled the demurrer, refusing to rule on the questions of laches or capacity to sue until the trial

on the merits. On June 13, 1933, judgment was rendered for the plaintiffs, holding void the elections of DeBolt and Norton and declaring the board of trustees to consist of Oberdorfer, Farwell, Shaffer and Bates, none of whom were officers of the corporation.

The judgment was based on findings that Norton, Thornton and McElroy resigned at the meeting of December 17, 1931; that Oberdorfer and Farwell did not resign at that time or at any time; that the attempt to accept their resignations on January 22, 1932, was illegal and void; that on February 29, 1932, a special meeting was held; that at that time the board of trustees consisted of Margaret N. P. Colburn-Wall, Henry B. Wall, Shaffer, Bates, Oberdorfer and Farwell; that there were present at the meeting Margaret N. P. Colburn-Wall, Fannie Shaffer, Henry B. Wall, trustees absent being Bates, Oberdorfer and Farwell; that at this meeting it was attempted to re-elect Thomas K. Norton and Corrinne E. Thornton, trustees and members; that they were declared elected by the votes of the three trustees present; that no notice in writing or otherwise was given Oberdorfer and Farwell of this special meeting and that the meeting and all transactions held thereat are therefore illegal and void; that on March 7, 1932, a special meeting was held of which no notice was given to Oberdorfer and Farwell; that at this meeting the trustees present were Wall, Colburn-Wall, Bates, Shaffer and Norton; that at this meeting Ethel M. DeBolt was attempted to be elected a member and trustee by votes of those present; that Oberdorfer and Farwell being entitled to notice and having had no notice the meeting and all transactions had thereat were illegal and void; that a quorum was not present at the special meeting of February 29, 1932; that there was not a three-quarters majority vote of qualified and acting trustees at the special meeting of March 7, 1932; that neither of these meetings was the annual meeting and that no notice of either meeting was sent to Oberdorfer or Farwell; that, pursuant to stipulation, the board of trustees on December 21, 1931, consisted of Bates, Farwell, Oberdorfer, Shaffer, Margaret N. P. Colburn-Wall and Henry B. Wall; that, during the months of May and June, 1932, trustees Margaret N. P. Colburn-Wall, Henry B. Wall and Corrinne E. Thornton resigned and are no longer trustees

or members; that the by-laws do not fix the hour of the day at which the stated, regular, special, annual or other meetings shall be held; that no notice was given Farwell or Oberdorfer of any meeting after January 22, 1932, except that an attempt was made by trustees Shaffer and Bates to call regular or stated meetings of the Institute by notice dated January 6, 1933; that that notice is void in that it is not in compliance with article III of the by-laws providing for notice in writing of not less than three days to be given by the president, secretary or three members; that Oberdorfer and Farwell have not missed three consecutive regular or stated meetings without excuse; and that the notice of January 6, 1933, recognized and ratified them as trustees during· all previous periods; that on their attendance of the March 10th meeting there was no objection to them as trustees.

From this judgment DeBolt alone appeals. In addition to the claim that the evidence does not support the findings and numerous specifications of error in connection with rulings on the evidence, the appellant contends that the trial court had no jurisdiction of the plaintiff corporation; that plaintiffs' attorneys had no authority to appear for the corporation; that the complaint did not state a cause of action in that it did not show the plaintiffs to be aggrieved by the elections of which they complained and did show they were guilty of laches and that laches and the aggrievement of the plaintiffs as well as their authority to bring in the corporation as a party plaintiff were material issues upon which the court failed to find.

The Institute is obviously a proper party to the action if not a necessary one and, since the action is one to determine who is in control of the corporation, it cannot be material whether it is joined as a party plaintiff or defendant, especially where, as here, the managing board is deadlocked or in control of those who are not legally entitled to the management of the corporation. The question of who has authority to act for and represent the corporation is the major issue in the action and the parties cannot be expected to determine it in advance. Certainly appellant suffered no prejudice.

With respect to the contention that the provisions of section 315· of the Civil Code were not complied with, it is sufficient to say that the record fails to disclose any such

noncompliance, and in fact, indicates that there was full compliance therewith.

■ The plaintiffs have made a sufficient showing of aggrievement to entitle them to maintain this action. They were deprived of their right to vote at the elections to fill vacancies on the board. (*Wright* v. *Central California C. W. Co.*, 67 Cal. 532 [8 Pac. 70].) ■ Nor does it appear that the plaintiffs were guilty of laches. Litigation between the two factions of the board has been pending since the institution of the Yankwich suit on January 16, 1932. The judgment in that case was rendered on March 7, 1932. The Ballard action seeking a determination of the plaintiffs' rights under the settlement and trust agreement, among them the right to continue themselves in office, was begun on March 21, 1932, the memorandum opinion of Judge Ballard being signed on December 2, 1932. The date of the signing of the findings and judgment by Judge Ballard does not appear. This suit was begun on March 9, 1933, to set aside elections held on February 29, and March 7, 1932, little more than a year before, during all of which time the parties had been engaged in active dispute, both in and out of the courts. It is asserted in respondents' briefs that not until August of 1932, during the trial of the Ballard action, did they learn that DeBolt and Norton were acting as trustees. The trial court in ruling on the demurrer specifically stated that laches did not appear upon the face of the complaint and that a ruling upon the question would be deferred until the close of the trial. The record shows no evidence offered by defendants upon this phase of the case. No evidence having been offered upon this question the trial court was under no duty to make findings on it.

■ We have carefully read the record, which contains a reporter's transcript as well as a bill of exceptions and we can only conclude that the evidence amply sustains the findings and judgment of the trial court. The evidence is in sharp conflict upon the question of whether the resignations of Oberdorfer and Farwell were ever presented. It is undisputed that no notice was given them of the meetings at which the elections of Norton and DeBolt were held and the notices of the stated meetings for the year 1933 sent to the plaintiffs after the rendition of the Ballard opinion are clearly open

to the construction ·put upon them by the trial court, that they were a recognition of the status of the plaintiffs as trustees and operated as a waiver of the claim that they had automatically resigned by missing three consecutive stated meetings in the year 1932 while the litigation with regard to the trust and settlement agreement was pending. It further appears from the orders in the Ballard case and the other circumstances that their attendance would have been futile and their nonattendance excusable. It is not necessary to discuss in more detail the evidence in support of the findings.

The bill of exceptions contains some forty-five specifications of error with respect to rulings on the testimony offered and questions asked of the witnesses, most of which are concerned with the materiality of the facts sought to be shown, only one being argued in the brief. In view of the fact that the case was tried by the court without a jury, that a great deal of the evidence was documentary, and that great latitude in the examination of witnesses was allowed both sides, we think there was no prejudice to the appellants. The purpose of the trial court to exercise great liberality in the hope of finally clearing up the tangled affairs of this corporation is apparent and there are no errors which would warrant a reversal of the judgment under section 4½ of article VI of the Constitution.

The motion to dismiss is denied and the judgment is affirmed.

Rehearing denied.